IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SEGUNDO PABLO LOJA CHOGLLO,<br><br>      Petitioner,<br><br>vs.<br><br>WARDEN OF MCCOOK DETENTION CENTER, et al.,<br><br>      Respondents. | 8:26-CV-54<br><br>MEMORANDUM AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

  The petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement (ICE), seeking a writ of habeas corpus under 28 U.S.C. § 2241. He contends his detention is unlawful because, among other reasons, he was denied a bond hearing pursuant to 8 C.F.R. §§ 236.1(d)(1) and 1236.1(d)(1). *See* filing 1. The government responds that detention is mandatory, not discretionary, and the petitioner is not eligible to be released. *See* filing 7.

  The briefing demonstrates that the petitioner's application for the writ only presents issue of law—and the government concedes this point, *see* filing 7 at 18—so the Court declines to hold a hearing. *See* § 2243. The Court is unpersuaded by the government's arguments concerning 8 U.S.C. §§ 1225 and 1226 for the reasons explained in *Velasco Hurtado v. Bondi*, No. 0:26-CV-546, 2026 WL 184884 (D. Minn. Jan. 24, 2026).

  Two additional considerations are worth noting in this case. The first is that the petitioner was detained despite a pending bona fide U-visa application, for which he was granted deferred action by USCIS. Filing 10-2.

And while deferred action status is revocable, nothing in the record suggests that the petitioner's has been revoked.

> "Deferred action" is an exercise of prosecutorial discretion that defers the removal of the noncitizen based on the noncitizen's case being made a [l]ower priority for removal but does not confer any immigration status upon a noncitizen. When deferred action status is approved, that means no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated. An ever-growing number of district courts across the country have concluded that an unrevoked grant of deferred action prevents removal.

*Marcos L. v. Noem*, No. 26-CV-676, 2026 WL 327953, at *2 (D. Minn. Feb. 3), *report and recommendation adopted*, 2026 WL 331418 (D. Minn. Feb. 8, 2026) (citing *Nevarez Jurado v. Freden*, No. 25-cv-943, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025) (collecting cases); 8 C.F.R. § 214.14; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)) (citations and quotations omitted). Accordingly, where a detainee's deferred action remains active, he is protected from removal, and there is no significant likelihood of his removal in the reasonably foreseeable future. *Id.* at 3.

      That's important because a statute permitting indefinite detention of an alien would raise a serious constitutional problem. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Court has already rejected § 1225 as a basis for the petitioner's detention. *See Velasco Hurtado*, 2026 WL 184884. The fact that there's no significant likelihood of the petitioner's removal from the United States in the reasonably foreseeable future means that, despite a non-final removal proceeding, the government can't rely on 8 U.S.C. § 1231 either. *See*

*Nevarez Jurado*, 2025 WL 3687264, at *7 (citing *Zadvydas*, 533 U.S. at 689). Because the petitioner may not be removed so long as his grant of deferred action remains active, his ongoing detention serves no purpose for the government. *Id.* at *12; *see also Marcos L.*, 2026 WL 327953, at *3.

That's why the immigration judge before whom the petitioner has already appeared dismissed the removal proceeding the government brought against him. *See* filing 10-1. But the government appealed the immigration judge's decision, which brings the Court to the other matter that needs consideration: The government relies on the automatic stay provision of 8 C.F.R. § 1003.39. Under § 1003.39, "the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." So, the government contends, while that appeal is pending, the petitioner remains in removal proceedings and should be detained. *See* filing 7 at 5.

The history of the automatic stay provision is reviewed in some detail in *Günaydın v. Trump*, 784 F. Supp. 3d 1175, 1182-84 (D. Minn. 2025), and the Court need not repeat that discussion here. For the reasons stated in *Günaydın*, this Court concludes—as have many others—that the automatic stay provision violates the Fifth Amendment's Due Process Clause. *See id.* at 1186-91; *see also, e.g.*, *Arce v. Trump*, No. 8:25-CV-520, 2025 WL 2675934, at *6 (D. Neb. Sept. 18, 2025); *J.M.P. v. Arteta*, No. 25-CV-4987, 2025 WL 2984913, at *23 (S.D.N.Y. Oct. 23, 2025); *Alves da Silva v. U.S. Immigr. & Customs Enf't*, No. 25-CV-284, 2025 WL 2778083, at *6 (D.N.H. Sept. 29, 2025) (collecting cases); *Leal-Hernandez v. Noem*, 803 F. Supp. 3d 409, 425-29 (D. Md. 2025); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 675 (D.N.J. 2003); *Puerto-Hernandez v. Lynch*, No. 25-CV-1097, 2025 WL 3012033, at *11 (W.D. Mich. Oct. 28, 2025); *Maldonado Vazquez v. Feeley*, No. 25-CV-1542, 2025 WL

2676082, at *21 (D. Nev. Sept. 17, 2025). Accordingly, the Court is unpersuaded that the automatic stay provision justifies the petitioner's continued detention in this case.

IT IS ORDERED:

1. The Petition for Writ of Habeas Corpus (filing 1) is granted.

2. The government shall immediately return the petitioner to Minneapolis, Minnesota, or provide him with the means to do so.

3. The government shall release the petitioner from custody with no new conditions, and shall return any personal property seized from the petitioner when detained.

4. No later than **February 13, 2026**, the government shall file a status report certifying compliance with this Order.

Dated this 11th day of February, 2026.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
Senior United States District Judge